UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Action No. 5:17-cr-112-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| DELVAGIO CHRISTOPHER LAX, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\* \* \*

This matter is before the Court on Defendant's Motion to Suppress (including a motion for a *Franks* hearing) [DE 26]. The government responded and the Court held a hearing on December 22, 2017. For the reasons stated on the record and summarized below, the motion was **DENIED**.

### I. Facts

On July 14, 2017, Detective Jody Kizis of the Lexington Division of Police applied for and received a search warrant to search the residence of Defendant. The search warrant Affidavit, the full text of which is in the record at DE 39, Ex. A, relayed that the police were dispatched to Defendant's neighbors' residence by the occupant, Derrick Stroud. Mr. Stroud told the officer he had just had an argument with Defendant and that Defendant approached him with two other men, and that Defendant

had a chrome handgun with a black handle in his waistband. Mr. Stroud also stated that Defendant told him he was going back into his house to retrieve more firearms, and he would be back. After unsuccessfully attempting to contact anyone inside Defendant's residence, the officer had a conversation with another witness, Sarah Gillim. Ms. Gillim stated she saw Defendant with a 1911 handgun in his hand, walking between his property and Mr. Stroud's property. She further stated she heard Defendant state: "Look me up on the Internet, look what I did to those people. I can do the same to you." Eventually Defendant and several other people came out of the residence, including one person possessing a handgun (but not handgun previously described by the witness). The search warrant Affidavit also discusses that officer viewed a video on YouTube which featured Defendant in possession of what appeared to be firearms.

On the basis of the information in the Affidavit, the officers at the scene obtained a search warrant. Pursuant to the warrant the officers seized a number of items, including the handgun which forms the basis of this case.

## II. Probable Cause Supported the Search Warrant

Defendant argued the finding of probable cause in this case relied almost entirely on the statements of Ms. Gillim and Mr. Stroud, and the officer did not disclose that they are in a

romantic relationship, nor did the office disclose that Mr. Stroud, Ms. Gillim, and Mr. Lax have had a long-standing feud. Defendant argues this feud and the romantic relationship provided the motivation for Mr. Stroud and Ms. Gillim to band together to lie to the police about Defendant. Defendant also argues that the Affidavit was drafted with "reckless disregard" because the officer omitted the fact that Mr. Stroud had armed himself with a shotgun during this verbal altercation with Defendant.[1] Defendant argues it was actually Mr. Stroud who made threats against him.

This Court needs to "look only to the four corners of the affidavit" to determine whether the search was supported by probable cause. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Pinson,* 321 F.3d 5589, 565 (6th Cir. 2003)). Because the search at issue occurred pursuant to a search warrant, the Defendant "has the burden of making a prima facie case that the search was illegal." *United States v. Franklin*, 284 F.App'x 266, 275 (6th Cir. 2008). Defendant cannot meet this burden.

"Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (per curiam).

---

[1] Mr. Stroud lawfully possessed the firearm on his premises.

In making this determination, the magistrate's decision "should be afforded great deference." *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983), *United States v. Coffe*, 434 F.3d 887, 892 (6th Cir. 2006). Such deference ensures that "an issuing [judge's] discretion [will] only be reversed if it was arbitrarily exercised." See *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). The reviewing court must uphold the issuing judge's probable cause determination if a "substantial basis" existed for the judge to conclude that a search would uncover evidence of wrongdoing. *Gates* at 2331; *Allen* at 973.

The "determination of whether probable cause existed at the time of the search is a commonsense, practical question to be judged from the totality of the circumstances." Line by line scrutiny of the supporting affidavit(s) is also inappropriate. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)). An affidavit must be "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)

Although some facts were not included in the Affidavit, there were sufficient facts to make a determination that probable cause existed. One witness summoned officers to his home and identified

Defendant as having a hand gun, and stating he was going back into the residence to retrieve more firearms. All of these occurred after a verbal altercation. A second witness added that Defendant said, "Look me up on the Internet, look what I did to those people. I can do the same to you[,]" which was threating in nature. The fact that these two witnesses were engaged to be married does not change the analysis. It is not even relevant. Nor does it matter whether Mr. Stroud and Mr. Lax had a previous "long-running feud." Defendant had only living next door to Mr. Stroud for approximately one month, so any "feud" between the two neighbors was necessarily new, not "long-running" as alleged by Defendant.

Even if the Affidavit had disclosed the prior or ongoing disagreements between the two men, the facts still support a finding that probable cause existed sufficient to issue the search warrant. The fact remains that two witnesses described seeing Defendant with a firearm, and one witness heard him say that he was going back into his residence to retrieve more firearms, and the other witness heard Defendant say "Look me up on the Internet, look what I did to those people. I can do the same to you[,]" presumably a reference to the news articles detailing Defendant's prior involvement in a shooting. Based on the statements by the witnesses, probable cause existed to search Defendant's residence for firearms.

The Sixth Circuit Court of Appeals has held that "a known informant's statement can support probable cause even though the affidavit failed to provide any additional basis for the informant's credibility and the informant has never provided information to the police in the past . . . ." *United States v. Kinison*, 710 F.3d 678, 682-83 (6th Cir. 2013). "[T]his conclusion is even clear when the known informant's decision to go to the police has also subjected [him] or her to potential prosecution." *Id.* at 6839 citing *United States v. Couch,* 367 F.3d 557, 560 (6th Cir. 2004) ("The statements of an informant . . . , whose identity was known to the police and who would be subject to prosecution for making a false report are thus entitled to far greater weight than those of an anonymous source.") (quoting *United States v. May*, 399 F.3d 817, 8240-25 (6th Cir. 2005)). The officers on the scene obtained the identity of Mr. Stroud and Ms. Gillim, thus subjecting them to prosecution if they were fabricating their report as romantic partner "with a beef" with Defendant. The officers and Fayette District Judge properly relied on the witness' statements in finding that probable cause existed to search the residence.

Additionally, there was sufficient nexus to the residence to search it. Mr. Stroud reported Defendant said he had more guns inside the house, and that Defendant stated he went inside to

retrieve them. Although Mr. Stroud and Ms. Gillim's descriptions of the gun in Defendant's possession differed, both were consistent that it was a handgun or pistol held in his the front of his waistband. Law enforcement suspected Defendant possessed a number of firearms because he can be seen on YouTube videos posted in May 2017 with several suspected firearms, some of which appear to be at his former residence, where he resided one month prior to this incident. Firearms are the type of item that can be easily transported to a new residence and are often kept by individuals engaged in drug crimes (Defendant's felony drug convictions were included in the Affidavit). *See United States v. Hardin*, 248 F.3d, 489 (6th Cir. 2001). *See also United States v. Goodwin*, 552 F. App'x 541, 545-46 (6th Cir. 2014) (upholding warrant validity concerning firearms with 3-month timeline between last firearm sighting and warrant execution, stating, "because firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time, the witness's information regarding the firearms was not stale," and commenting that firearms have "enduring utility" to the holder and that owners often keep the guns in their home as a "secure operational base, "lessening the concern over a time gap (internal quotation marks))

The officers did not represent to the Fayette District Judge that the apparent firearms in the YouTube videos were confirmed

firearms, but, instead, forthrightly called them "suspected firearms." Nor did Fayette District Judge Megan Lake Thornton "rubber stamp" the request for a search warrant. She crossed out and disallowed the request to search the vehicle on the premises, allowing only a search of the residence.

The Court finds probable cause existed sufficient to support the search warrant.

**III. The Defendant has not Justified a *Franks* Hearing**

The defendant argues the Affidavit suffered omissions, as outlined above. "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154 (1978). A "defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden." *United States v. Green*, 572 Fed.Appx. 438, 441 (6th Cir. 2014) (internal quotation marks and citation omitted). However, "material omissions are not immune from inquiry under *Franks*, ... [but] an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official

conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). *See also United States v. Fowler*, 535 F.3d 408, 415-16 (6th Cir. 2008) ("This court has repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement.").

A *Franks* violation requires a showing of intent. *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998). Applying the standards set forth above, Defendant has not made a substantial preliminary showing that the officer drafting the Affidavit knowingly and intentionally, or with reckless disregard for the truth, included a false statement in or omitted material information from the Affidavit. In fact, the omissions Defendant complains of are largely immaterial to the subject matter in the Affidavit; thus, it is obvious why the officer did not include those pieces of information. The Court holds Defendant is not entitled to a Franks *hearing.*

### IV. Conclusion

Accordingly, for the reasons stated on the record during the Motion Hearing which occurred on December 22, 2017, and expouned upon herein, Defendant's Motion to Suppress [DE 26] was **DENIED.**

This 28th day of December, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge