```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 5:17-cr-112-JMH-1 |
| v. | ) | |
| | ) | |
| DELVAGIO CHRISTOPHER LAX, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

\*\* \*\* \*\* \*\* \*\*

This matter comes before the Court on Defendant Delvagio Christopher Lax's Motion to Terminate Supervised Release [DE 74]. For the following reasons, the Court will deny Lax's Motion to Terminate Supervised Release [DE 74].

## I. BACKGROUND

In January 2018, Lax pleaded guilty to being a felon in possession of a firearm, pursuant to 18 U.S.C. § 922(g)(1). [DE 54; DE 60]. The United States and Lax agreed to a sentencing guideline range of 30 to 37 months imprisonment, and on April 2, 2018, despite Lax's arguments in support of a 30-month sentence, the undersigned sentenced Lax to 37 months imprisonment followed by a 3-year term of supervised release. [DE 59; DE 61]. While Lax had problems with substance abuse around the time of his sentence, he asserts that he has been clean for nearly 4 years. [DE 74, at

2]. Now, Lax requests that the Court end his term of supervised release, which, at the time he filed his Motion [DE 74] in November 2021, he had completed 19 months of supervised release without incident. [DE 74, at 5].

## II. DISCUSSION

Lax moves for early termination of supervised release under 18 U.S.C. § 3583(e), which states the following:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice .
> . . .

The previously mentioned 18 U.S.C. § 3553 factors are as follows:

> (a) Factors to be considered in imposing a sentence.--
> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>     (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>     (2) the need for the sentence imposed--
> . . .
>         (B) to afford adequate deterrence to criminal conduct;
>         (C) to protect the public from further crimes of the defendant; and
>         (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

```
     . . .
     (4) the kinds of sentence and the sentencing
range established for--
         (A) the applicable category of offense
         committed by the applicable category of
         defendant as set forth in the guidelines--
              (i) issued by the Sentencing Commission
              pursuant to section 994(a)(1) of title
              28, United States Code, subject to any
              amendments made to such guidelines by
              act of Congress (regardless of whether
              such amendments have yet to be
              incorporated by the Sentencing
              Commission into amendments issued under
              section 994(p) of title 28); and
              (ii) that, except as provided in
              section 3742(g), are in effect on the
              date the defendant is sentenced; or
         (B) in the case of a violation of probation
         or supervised release, the applicable
         guidelines or policy statements issued by
         the Sentencing Commission pursuant to
         section 994(a)(3) of title 28, United States
         Code, taking into account any amendments
         made to such guidelines or policy statements
         by act of Congress (regardless of whether
         such amendments have yet to be incorporated
         by the Sentencing Commission into amendments
         issued under section 994(p) of title 28);
     (5) any pertinent policy statement--
         (A) issued by the Sentencing Commission
         pursuant to section 994(a)(2) of title 28,
         United States Code, subject to any
         amendments made to such policy statement by
         act of Congress (regardless of whether such
         amendments have yet to be incorporated by
         the Sentencing Commission into amendments
         issued under section 994(p) of title 28);
         and
         (B) that, except as provided in section
         3742(g), is in effect on the date the
         defendant is sentenced.[1]
     (6) the need to avoid unwarranted sentence
     disparities among defendants with similar records
     who have been found guilty of similar conduct;
     and
```

3

>        (7) the need to provide restitution to any
>        victims of the offense.

Here, Lax asserts that the § 3553 factors weigh in favor of granting his Motion [DE 74]. Lax proclaims that he "has accepted responsibility and his time for his crime of possessing a firearm as a prohibited person" and notes "that this was a possession crime, not a use crime." [DE 74, at 4-5]. Since starting his term of supervised release, Lax appears to have made great progress at staying sober, bringing his family back together, working, and not engaging in any criminal conduct. *See* [DE 74]. Lax posits that his demonstrated ability to stay sober, work, care for his family, contribute to his community, and refrain from committing any criminal acts shows that there is no evidence that the public needs to be protected from him. *Id*. at 5. While Lax requests that his term of supervised release be terminated, he insists that such a termination would not depreciate the seriousness of the crime, of which he has paid the entirety of the fines, costs, fees, and interest owed, because he was sentenced at the top of his guideline range and had served around 19 months of his term of supervised release at the time that he filed the present Motion [DE 74]. *Id*. at 5-6. Lastly, Lax recognizes that "three years of supervised release would appear to avoid sentencing disparities for similarly situated people," but argues, "The granting of this motion to

4

anyone who has accomplished the foregoing list that Mr. Lax has worked hard to achieve would also be appropriate." *Id.* at 6.

In response, the United States objects to Lax's request for early termination of supervised release due to his criminal history and the "dangerous nature of the facts leading this conviction," which involved Lax possessing a pistol in his waistband during a verbal disagreement with a neighbor. [DE 76, at 1]. Throughout the course of the incident, both the neighbor and his fiancée, who was at a nearby house, told responding officers that Lax gestured to the pistol in his waistband while making threating remarks. After obtaining a search warrant for Lax's residence, Lax told officers he was the one who called the police, but the dispatch supervisor revealed the only call related to the incident came from the neighbor. Lax also lied to officers, stating that the pistol described by the neighbor belonged to another person and was never in his possession. However, officers reviewed Lax's online videos and security camera images showing Lax to have been in possession of multiple firearms while also bragging about his past crimes and violent acts. As the United States correctly asserts, Lax's total criminal history score at the time of his sentencing was a 10, which established a criminal history category of V. *Id.* Moreover, his probation for two of his felony convictions was revoked. *Id.* While Lax asserts his probation officer has been informed of Lax's intent to file the present Motion [DE 74] and has reported that

5

Lax does not have any violations of his supervised release or any investigations related to a violation, the United States is correct that the fact Lax filed the Motion [DE 74] instead of the U.S. Probation Office "is strongly indicative that the U.S. Probation Office is not in support of this Motion." [DE 76, at 2].

The Court commends Lax on what appears to be a genuine effort at rehabilitation and hopes Lax will stay on that path. However, due to Lax's criminal history, his past propensity to violate probation, and the potential for serious harm or death had officers not intervened in time during his offense conduct, the Court is not inclined to terminate his term of supervised release. The Court is also concerned about Lax's dishonesty at the time of his arrest and his attempt to downplay his current conviction as a possession charge not a use charge. While it is true that Lax was only convicted of possessing a firearm as a felon, his behavior surrounding the possession included him bragging about violence while having a verbal altercation with his neighbor that was primed for violence had officers not responded in time, as both Lax and the neighbor were in possession of firearms.

If Lax is serious about his rehabilitation, he should have no problem with the U.S. Probation Office overseeing that rehabilitation for what remains of his term of supervision. The Court asks that Lax not see this decision as a setback or a condemnation on the progress he has made in prison and throughout

6

his term of supervision. Instead, Lax should consider this as just another stop on his road to regaining both the Court and the community's trust. As much as the Court would like to believe that Lax no longer needs supervision, the potential for harm if that belief proves false is too high to end his term of supervised release prematurely. Therefore, having considered the matter fully, and being otherwise sufficiently advised,

**IT IS ORDERED** that Defendant Delvagio Christopher Lax's Motion to Terminate Supervised Release [DE 74] is **DENIED.**

This 20th day of January, 2022.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

7